# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| MICHELINE C. CANAMORE, | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No. 5:09-CV-587-RDP |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION

Plaintiff Micheline C. Canamore brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Proceedings Below**

Plaintiff filed her application for DIB under Title II of the Act and for SSI benefits under Title XVI of the Act on October 24, 2005, alleging a disability onset date of October 20, 2003. (Tr. 69-74). In an Affidavit of Work Activity dated July 16, 2007, Plaintiff amended her onset date of disability from October 20, 2003 to September 30, 2005. (Tr. 75). Plaintiff's applications were denied. (Tr. 48-49, 59-63). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 64). A hearing was held before ALJ Patrick R. Digby on July 18, 2007.

(Tr. 29-34, 259-85). In his August 10, 2007 decision, the ALJ determined that Plaintiff suffers from a severe combination of impairments of epileptic seizures, but does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in the Act. (Tr. 23). The ALJ further determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, limited to occasionally climbing ramps and stairs, never using ladders, ropes or scaffolds, and that she was precluded from work around hazardous machinery, bodies of water, and commercial driving. (Tr. 23-24). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (Tr. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

**II.     Facts**

At the time of the hearing, Plaintiff was forty-three years old and had completed one year of college. (Tr. 159, 265). Plaintiff alleges that she is unable to work because she has grand mal seizures at least once each week and petit mal seizures around three to four times each week. (Tr. 155, 240). Plaintiff states that she frequently experienced seizures while working and because she was having so many seizures, underwent brain surgery on October 25, 1995. (Tr. 155). Plaintiff maintains that although she experiences fewer seizures since the surgery, she is still unable to work. (*Id*.). Plaintiff further claims her memory has been affected and she has problems with her short term memory as well. (*Id*.). Plaintiff has previous work experience as a fast food delivery driver, daycare teacher, a salesperson at a clothing store, and machine worker. (Tr. 107).

Plaintiff relates she experienced her first seizure when she was only nine months of age and was diagnosed with febrile seizure of unclear duration. (Tr. 192). Plaintiff experienced another seizure with fever at the age of eighteen months and was started on Phenobarbital and Dilantin. At the age of four, Plaintiff was admitted into the hospital with seizures. Plaintiff continued to have

seizures until the age of ten.  At age twelve, Plaintiff's use of Phenobarbital was discontinued and she remained seizure free until age nineteen when she experienced a generalized tonic-clonic seizure while reading on the couch.  (*Id.*).

On March 22, 1995, upon order of Dr. Norwood, Plaintiff was seen at Decatur General Hospital Department of Imaging and administered an MRI of her brain, with contrast.  The results showed no mass, mass effect, abnormal signal, or abnormal enhancement identified involving the brain.  (Tr. 217).

On September 5, 1995, Plaintiff was admitted to The University of Alabama at Birmingham ("UAB") Medical Center for video electroencephalogram monitoring.  (Tr. 193).  Monitoring results showed frequent left anterior central spikes consistent with a left anterior temporal focus.  (*Id.*). Plaintiff was discharged on September 8, 1995.  She was given an increased dosage of Tegretol and was placed on Ativan for three days.  (Tr. 200).

On October 25, 1995, Plaintiff underwent a left temporal lobectomy.  The surgery was successful and because her wound was healing well and there was no evidence of seizure activity, Plaintiff was discharged home on October 27, 1995, with instructions to return to the neurosurgery clinic in one week to have staples removed.  (Tr. 196).

On September 9, 2004, after a 9-year hiatus, Plaintiff visited Dr. Norwood with Decatur Neurology, P.C.  (Tr. 238).  During this visit, Plaintiff reported having only one seizure in the years following her surgery and that incident was associated with missing doses of medicine.  (*Id.*). Plaintiff did report partial seizure activity characterized by a "feeling inside of me" for a few minutes.  (*Id.*).  During these episodes Plaintiff told that she could not speak, but neither did she experience altered consciousness or memory gaps.  (*Id.*).  Dr. Norwood expressed his uncertainty that these "feelings" were actually seizures.  (Tr. 239).  Plaintiff stated that she takes Tegretol once

or twice each day (instead of the prescribed three times each day) because of an inability to afford her medication. (Tr. 238). Plaintiff reported smoking about one pack of cigarettes daily. (*Id*.). Dr. Norwood encouraged Plaintiff to purchase medications rather than cigarettes and to keep her appointment for screening with the Free Community Clinic. (Tr. 239). Dr. Norwood and Plaintiff also reviewed Alabama's driving laws as they pertain to her history of epilepsy.

Plaintiff visited Dr. Norwood again on July 7, 2005. (Tr. 237). During this visit, Plaintiff reported a light seizure three months prior, but admitted taking her medication only once or twice daily, again because of difficulties affording the medicine. (*Id*.). However, it was noted that Plaintiff continues to smoke one pack of cigarettes daily and understood that a month's worth of cigarettes likely costs more than a half years supply of her required medication. (*Id*.). Dr. Norwood noted that Plaintiff had not kept her appointment at the Free Clinic and urged her to seek treatment there. (*Id*.). Dr. Norwood again advised Plaintiff that he did not believe it was safe for her to drive and filed a Department of Public Safety form to that effect. (*Id*.).

On December 15, 2005, Plaintiff reported to Dr. Norwood that she had not had a seizure in the previous eight months and would like to pursue having her driver's license reinstated. (Tr. 255). It was noted that Plaintiff had decreased her smoking, but had not contacted the Free Clinic as suggested. (*Id*.). Plaintiff again reported occasionally missing doses of her medication. (*Id.*).

On December 21, 2005, six days after her visit with Dr. Norwood, Plaintiff visited Dr. S. Aggarwal for a consultative examination regarding her application for DIB and SSI benefits . (Tr. 240). Plaintiff reported to Dr. Aggarwal that she has one to two petit mal seizures a week and three to four grand mal seizures per year. (*Id*.). Plaintiff noted that the grand mal seizures generally occur in her sleep. (*Id*.). She also denied any memory or concentration problems and again stated that she smokes approximately one pack of cigarettes daily. (*Id*.). Dr. Aggarwal opined that Plaintiff should

4

avoid working with heavy machinery and driving automobiles due to her seizure activity but that she retained the ability to sit, stand, lift, and walk. (Tr. 242).

Upon returning to Dr. Norwood in June 2006, Plaintiff reported infrequent light seizures, occurring about once each week. (Tr. 254). Plaintiff also reported that she had not had a generalized convulsion in "a good while." (*Id*.). Again, Plaintiff had not visited the Free Clinic but had a scheduled appointment the following month. (*Id*.). Plaintiff's medication dosage was adjusted upward somewhat and she was again strongly encouraged to stop smoking. (*Id*.).

Plaintiff began visiting the Free Clinic in April 2006 and on March 27, 2007 it was noted that she was having well-controlled seizures and had experienced no grand mal seizures over the previous year. (Tr. 243-52). At her last visit to the Free Clinic in June 2007, Plaintiff did not report any additional seizure activity. (Tr. 256-58).

## III.   ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the

Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability, September 30, 2005. (Tr. 23, Finding No. 2). Based on the medical evidence presented, the ALJ concluded that Plaintiff does have a severe impairment of epileptic seizures. (Tr. 23, Finding No. 3). However, the ALJ found that this impairment does not meet or equal one of the listing impairments in the Act. (Tr. 23, Finding No. 4). The ALJ further found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 23). The ALJ determined that Plaintiff retains the RFC to perform the exertional demands of light work. (Tr. 23, Finding No. 5). However, the ALJ found that Plaintiff cannot climb ladders, ropes or scaffolds, and is precluded from working around hazardous machinery, bodies of water, and commercial driving. (*Id*.). The ALJ found that Plaintiff has not been under a disability as defined in the Act. (Tr. 28, Finding No. 7). The ALJ also determined that Plaintiff was capable of performing past relevant work as a daycare worker and fast food worker. (Tr. 27, Finding No. 6). Therefore, the ALJ found that Plaintiff is not entitled to a period of benefits. (Tr. 30-31).

The ALJ called an impartial vocational expert ("VE"), Barbara Azzam, to testify. (Tr. 262). The VE was present throughout the hearing and familiar with Plaintiff's background. (*Id*.). The VE considered Plaintiff's past relevant work and answered a series of hypothetical scenarios posited by counsel for both sides. (Tr. 281-84). Based on the record and the VE's testimony, the ALJ found that Plaintiff's past relevant work was within her current RFC and that she would be able to return to her past relevant work. (Tr. 27). Further, the ALJ found that the job duties of Plaintiff's previous occupations as generally required by employers throughout the national economy were within Plaintiff's RFC. (*Id*.). Accordingly, the ALJ concluded Plaintiff was not under a disability at any time through the date of the decision. (Tr. 21-28).

## IV.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. #1). Plaintiff asserts that this court should grant the relief sought because the findings of the ALJ are not based on substantial evidence and improper legal standards were applied. (Doc. #1 at 2). More specifically, Plaintiff argues that the ALJ applied an outdated standard for determining whether seizures meet or equal a listing of impairment within the meaning of the Regulations. (Pl. Br. at 5-7).

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by

"substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that the proper legal standards were applied.

### A. The ALJ Misapplied the Regulations for Determining Whether Plaintiff Has an Impairment That Meets or Medically Equals One of the Listed Impairments Contained in 20 CFR Part 404 Subpart P Appendix 1.

Plaintiff vehemently maintains that the ALJ's decision is due to be reversed because he misapplied the standard for determining whether a seizure meets or medically equals one of the listed impairments under the Act's Regulations. (Pl. Br. at 5-7). Specifically, Plaintiff points out that in rendering his decision, the ALJ stated that Plaintiff could not meet the listing requirements

for seizures because her evidence was not accompanied by EEG documentation.[1]  (Tr. 24-25). Plaintiff notes that in referencing this language the ALJ cited sections 11.02 and 11.03 of the Listing of Impairments.  (Tr. 25; Pl. Br. at 5).

As Plaintiff correctly points out, and the Commissioner concedes, although both cited sections previously required a claimant to submit EEG documentation of seizures in order to satisfy the listing of impairments, that requirement was deleted in 2002.  *See* 20 C.F.R. pt. 4, subpt. P app. 1 (2009) (*compare with* 20 C.F.R. pt. 4 subpt. P app. 1 (2000)).  Plaintiff asserts because the ALJ apparently required her to show EEG documentation to establish the existence of a listing impairment, a more stringent evidentiary standard was applied than the current regulations require. Alternatively, Plaintiff argues that even if the ALJ's use of the EEG language did not constitute a higher evidentiary standard, nevertheless, the very fact that the ALJ used such outdated language suggests that he did not properly develop the record and failed to properly consider step three of the five step analysis.  (Pl. Br. at 5-6).

This court sees merit in Plaintiff's contention that the ALJ applied a more stringent evidentiary burden in the third step of the five step process.  Although the ALJ did not explicitly state whether the lack of EEG documentation formed the basis of his conclusion that Plaintiff failed to demonstrate a listed impairment, its mere inclusion in his opinion suggests such an application. The ALJ's use of an excised element of the correct regulation would, in theory, require presentation of more evidence then the current regulations require.  Of course, there is nothing expressly stated

---

[1] An electroencephalogram (EEG) is a painless procedure that uses small, flat metal electrodes attached to the scalp to detect electrical activity in the brain.  An EEG is one of the main diagnostic tests for epilepsy.

9

in the ALJ's opinion which indicates whether the lack of EEG documentation formed a basis for his finding that Plaintiff failed to meet the listing requirements. In fact, there is actually some limited documentation in the record that evidences that a limited number of EEGs were performed although the results of these tests are not apparent from the record. (Tr. 173, 200). Nonetheless, on this record, and in the absence of a clearer indication as to the impact of the EEG documentation language, the court must conclude that an inappropriately stringent standard was applied by the ALJ.

Plaintiff argues less forcefully that the inclusion of language deleted from the Code of Federal Regulations five years prior to the ALJ's decision suggest that the he did not sufficiently develop the record. (Pl. Br. at 6). However, this argument is flawed in large part due to a severe inferential gap. While the ALJ's misstatement of the regulations might (although does not necessarily) suggest a misapplication of the law, it does not directly bear on the issue of the development of the record. The ALJ's recitation of the procedural and factual history of the case appears cogent and more than sufficient. The ALJ's opinion spends ample time discussing Plaintiff's personal statements and fully examines her medical records. As Plaintiff herself correctly points out, "Social Security proceedings are inquisitorial rather than adversarial" and that the ALJ has a duty "to investigate the facts and develop arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000). This court finds that the ALJ has sufficiently discharged that duty in spite of the use of an obsolete verbal formulation of a regulation.

Plaintiff also argues that the inclusion of the EEG documentation language suggests that the ALJ failed to properly consider step three of the five step analysis – *i.e.* whether Plaintiff meets the listing requirements. (Pl. Br. at 6). As discussed above, it is not clear that the ALJ even considered EEG documentation in his decision and what impact (if any) this had on the finding that Plaintiff failed to meet the listing requirements. Consequently, Plaintiff's suggestion that the ALJ potentially

misapplied step three is reasonable.  However, unfortunately for Plaintiff, and for reasons discussed below, this uncertainty, standing alone, is not enough to justify remand.

> B. **The ALJ's Misapplication Section 11.02 and 11.03 of the Listing of Impairments Does Not Constitute Reversible Error.**

The court begins by noting that in the game of baseball a single wild pitch, without more, does not entitle the batter to a base on balls.  This is an apt analogy both in this case and as it relates more generally to appellate review.  Just as one pitch outside the strike zone does not in itself place the batter on base, a single error by the ALJ does not automatically indicate that a remand is in order.  Thus, while the ALJ's misstatement of applicable regulatory standards does indeed raise questions as to the propriety of a decision, it does not entitle a claimant to an automatic reversal and remand without a showing that the decision's outcome was wrong.

Plaintiff bears the ultimate burden of providing evidence that she was disabled within the meaning of the Social Security Act.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a); *Ellison v. Barnhart*, 355 F.3d 1272, 1278 (11th Cir. 2003).  To discharge this burden Plaintiff must show that her impairments met or medically equaled a listed impairment.  20 C.F.R. § 416.920(d).

> To "meet" a listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement.  To "equal" a Listing, the medical findings must be "at least equal in severity."

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  For the reasons explained below, the court concludes that Plaintiff has not presented sufficient evidence that her grand mal seizures satisfy the requirements of Listing 11.02, or that her petit mal seizures satisfy the requirements of Listing 11.03.  Therefore, while the ALJ erred by referencing an obsolete standard, the error was harmless.

11

### i.      Plaintiff Failed to Show Sufficient Frequency of Grand Mal Seizures to Satisfy the Requirements of Listing 11.02.

Listing 11.02 requires the following showing:

> 11.02 Epilepsy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; *occurring more frequently than once a month* in spite of at least 3 months of prescribed treatment.  With:
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. pt. 404, subpt. P. app. 1, § 11.02 (2009).

As discussed above, the current version of Listing 11.02 no longer requires EEG documentation for a claimant to discharge her evidentiary burden under the third part of the five step analysis.  The Commissioner argues that notwithstanding this fact, the ALJ may still appropriately require EEG documentation because Social Security Ruling ("SSR") 87-6 which the ALJ cited in his opinion (Tr. 24), continues to require documentation of seizures with at least one EEG.  *See* Social Security Ruling 87-6.  However, that ruling came down fifteen years before the Regulations were amended in 2002; therefore, it is no longer instructive to the extent that it directly contradicts the amended Regulations.

Although it appears that the ALJ erred by including the EEG documentation language, the Commissioner also argues that this mistake does not constitute reversible error because Plaintiff otherwise failed to carry her burden of showing that she met or equaled the requirements of Listing 11.02. (Def. Br. at 7).  First, the Commissioner contends that while Plaintiff has an undeniable history of grand mal seizures, she failed to demonstrate that they occurred more than once a month as required by Listing 11.02.  (Def. Br. at 7).

In his decision, the ALJ noted that in September 2004, Plaintiff told Dr. Norwood that control of her seizures was much improved during the nine year period following the performance of her temporal lobectomy. (Tr. 26, 238). In fact, Plaintiff told Dr. Norwood that during the nine year period between October 1995 and September 2004 she had endured only one generalized seizure – and that was associated with her failure to take her medication. (Tr. 238-39). At that time, Plaintiff also reported "simple partial seizures" about once each week (Tr. 238). However, Dr. Norwood stated that he was "not certain that she has had seizures when taking her anti-convulsant medications as directed," and that "[c]ertainly, she has not had a generalized seizure during that time, except when missing doses." (Tr. 239). In her December 2005 visit to Dr. Norwood, Plaintiff reported having only one seizure in the previous year. (Tr. 237). In fact, Plaintiff's report of her condition was so positive that she requested Dr. Norwood's help in reinstating her driver's license. (Tr. 26, 255). The ALJ also noted that when Plaintiff visited the Free Clinic on multiple occasions she reported nothing other than occasional petit mal seizures. (Tr. 26, 243-52).

In her hearing, Plaintiff never stated the exact frequency of her grand mal seizures. (Tr. 259-85). Indeed, it is only when Plaintiff visited Dr. Aggarwal for a consultative examination on December 21, 2005 that she reported one to two episodes of petit mal seizures a week and three to four episodes of grand mal seizures per year (occurring primarily in her sleep). (Tr. 240). Interestingly, Plaintiff made this report to Dr. Aggarwal only six days after telling Dr. Norwood that she had not had a seizure in the prior eight months. (Tr. 27, 255). The ALJ noted this glaring inconsistency and found that Plaintiff's statements to Dr. Aggarwal were unsupported by the record. (Tr. 27). Plaintiff's inconsistent statements were properly taken by the ALJ as raising an issue of credibility: was Plaintiff mischaracterizing her condition to Dr. Norwood in order to have her driver's license reinstated, or was she doing so to Dr. Aggarwal in order to prevail on her Social

Security disability claim. Either way, the obvious inconsistency in Plaintiff's assignment of the frequency of seizures makes the ALJ's conclusion that her statements to Dr. Aggarwal were not supported by the evidence reasonable.

Moreover, even assuming that Plaintiff was having three to four grand mal seizures annually, she still failed to establish Listing 11.02's requirement of showing that the seizures occur "more frequently then once a month." In light of the above, this court finds that, even applying the correct legal standard here, there is substantial evidence to support the ALJ's finding that Plaintiff failed to demonstrate that her seizures occur with sufficient frequency to satisfy Listing 11.02's requirements.

>    **ii**.    **Plaintiff Failed to Produce Sufficient Corroborative Evidence of Petit Mal Seizures to Satisfy the Requirements of Listing 11.03.**

A claimant may establish an impairment based upon a condition involving petit mal seizures by satisfying Listing 11.03 which provides that:

> 11.03—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occluding more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. pt. 404, subpt. P. app. 1, §11.02 (2009).

The Commissioner contends that Plaintiff has failed to carry her burden of presenting medical documentation that her petit mal seizures met or medically equaled Listing 11.03. Plaintiff told Dr. Aggarwal that she had one to two petit mal seizures per week. (Tr. 240). Plaintiff also stated in her Questionnaire for a Description of Seizures, as well as during her hearing, that she averaged having petit mal seizures once each week. (Tr. 172, 272-73). However, Plaintiff told Dr. Norwood in June 2006 that she had only infrequent light seizures. (Tr. 254). This report was

echoed in the treatment notes from the Free Clinic which state that her seizures were well-controlled, with only an "occasional" petit mal seizure. (Tr. 244). In September 2004, Plaintiff did tell Dr. Norwood that she averaged one simple partial seizure per week. (Tr. 238). However, Dr. Norwood expressed doubt that these were actually seizures, especially when she wasn't taking her anti-convulsive medication properly. (Tr. 239). Indeed, Dr. Norwood's doubt was well-founded because he had not professionally observed and documented Plaintiff's seizure occurrence. (*Id.*). The Commissioner argues that medical evidence about professional observations related to the degree of epileptic impairment are necessary unless there is some other "[t]estimony of persons other than claimant [which] is essential for description of type and frequency of seizures." *See* 20 C.F.R. pt. 404, subpt. P., app. 1 §11.00A. The Commissioner contends that because Plaintiff produced neither professional observations nor testimony from other persons (including lay persons) to corroborate her allegations of petit mal seizures she is unable to establish an impairment under Listing 11.03.

Plaintiff's ability to meet the requisites of Listing 11.03 is further undercut based upon the requirement that she produce evidence of petit mal seizures occurring more than once weekly, "*in spite of at least 3 months of prescribed treatment*." 20 C.F.R. pt. 404, subpt. P., app. 1 §11.03 (emphasis added). Plaintiff's prescription directs her to take Tegretol three times daily. (Tr. 164). However, at multiple points in the record, Plaintiff admits to taking Tegretol only once or twice daily. (Tr. 237, 238, 255). Plaintiff cites her inability to afford the prescription as the reason for not properly taking her medication. (Tr. 237). However, Plaintiff has continued to smoke a pack of cigarettes daily, an additional expense she has incurred that would likely more than offset her alleged funding shortfall for her medication. (*Id.*). Plaintiff's unwillingness (or failure) to comply with her medication regime raises substantial questions as to whether she can claim that she has undergone at least three months of prescribed treatment as required by Listing 11.03. In light of

these considerations, this court finds that even without the use of the EEG documentation evidence, there is still substantial evidence supporting the ALJ's finding that Plaintiff failed to meet Listing 11.03's requirements.

### iii. The ALJ's Use of Obsolete Regulatory Language Constitutes Harmless Error and Remand is Inappropriate.

Although it is true that the ALJ inappropriately applied an outdated verbal formulation of Listings 11.02 and 11.03, nonetheless, Plaintiff failed to produce evidence that, in the absence of the ALJ's error, her seizures would have met or equaled the Listing requirements. And while Plaintiff has correctly pointed to the ALJ's error, she has failed to show that she would otherwise be entitled to advance past step three of the five step analysis even if it had not been made.[2] Thus, even assuming the ALJ misapplied the EEG documentation language and that his misapplication affected his factual findings, that is nothing more than harmless error. That is because Plaintiff did not otherwise show that she met or equaled the listing requirements. Because Plaintiff cannot show that she was prejudiced by the ALJ's misapplication at step three of the five step process, there is not a basis for remanding this case to correct that error. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). This is so because, "[n]o principle of administrative law or common sense requires ... remand [of] a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Because this court finds that a different result would not have occurred, any error was harmless and remand is inappropriate.

---

[2] In any event, the court further notes that Plaintiff does not challenge the ALJ's application of steps four and five of the analysis. (Pl. Br. 5-7). Thus, any arguments Plaintiff might have propounded at those stages have been abandoned. *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

## VII.   Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___29th___ day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE